Please call the case number. Case number 7-1696, Keiko Davies v. Ingalls Health System et al. Okay, please step up, say your name, who you represent. Philip Davidson on behalf of the plaintiff appellant, your honors. Good morning, your honors. Kevin Clancy on behalf of Ingalls Health System. Whenever you're ready, Mr. Davidson. Thank you. Again, I represent the plaintiff appellant today, and as your honors know, this is an appeal from the grant of summary judgment in favor of defendant hospital, finding that no questions of fact exist whether the defendant physician who saw the plaintiff's decedent in the emergency room on the day of the care at issue was the apparent agent of the hospital. The plaintiff submits that such question of facts do exist and that the trial court erred in granting summary judgment. Counsel, can I ask you a very preliminary question? As far as the heading on your case, you designate the plaintiff as a special administrator and special representative of the estate. Are both those appropriate titles for the representative? Is it a probate designation? I believe that that was the appropriate designation. Can you tell the defendant if there was a probate, if there was an administrator and probate appointed or not? There's not. I think that the special representative was appointed in anticipation of a potential survival action. All right. Thank you. So no probate. Thank you. So I know your honors have all read the briefs and you're familiar with the case. So I think the most important starting point is to say that we recognize we're not claiming that the consent form in this case is ambiguous. And we're not claiming that the plaintiff's failure to read them, which she testified she did not read them, obviates its effect. We are simply pointing to case law and the plaintiff's competent testimony that there's other facts outside. Give me a couple of those other facts as well as the case law that you're pointing to. Well, the other facts are, in this case specifically, the doctor's badge, the advertisements of the hospital, which are from prior to, at the time of, and following the subject care. These badges reasonably identified the physician as an employee of the hospital. And this concept of a medical staff working together. Counsel, let me ask you something. If we assume for a minute that this fiction that many hospitals hold out, that the doctors who work there are independent contractors and we have nothing to do with them, they work here and they refuse our facilities, how else would the hospital communicate that to the public and to their patients other than by signs and consent forms? What else would they, what other method should they use? Well, Your Honor, actions speak louder than words. And in this case, all the other things that were presented. Like what? I'm asking, give me a couple of examples. Well, the badge. And in Hammer, the case that we rely on, as well as the Terry v. OSF. By the way, I know that's an unpublished decision, but, and we're not supposed to cite it. That's true. Don't cite it. It's the one case that says totally what we're arguing here. Just as you said, it's an unpublished opinion and the lawyer's unpublished decision and whoever handled that case didn't ask for it to be published and we didn't think it needed publication, so it's not published, so don't cite it. Well, Your Honor, let's take Hammer, for example. The court found the consent form for there to be a question of fact of whether the consent form could be ambiguous to the reasonable person. It said some or all positions. Okay. But Hammer is totally distinguishable from this case, in my opinion, because in this case, there was no some or all. I mean, this consent form is one of the more aggressive consent forms that I've ever seen. Basically, it said these people are not our employees. Don't think that they're our employees. I know they work here, but we just gave them a place to see their patients. They don't work for us. I mean, that's pretty much what it said. And it's totally inconsistent with the reality that a patient is faced when they present to the modern emergency room. Let me answer something. I know I'm cutting you off, but I'm trying to. Your plaintiff talked about the doctors and nurses working together. In the reality of life, of treatment in an emergency room, how would you take care of a patient without working with the other people who are working there? Exactly. And how would you, for the physician to share the provisions of. . . No, but I'd like you to answer my question before you ask me one. How would a physician be able to effectuate caring for a patient if he doesn't, if he or she isn't, quote, working together with the other caregivers in the emergency room? I agree with you, Your Honor. And that's why I think that the trial court shouldn't have said that a reasonable person couldn't have presumed an employment relationship. So in any emergency room where the physicians are working together with the nurses, they're all apparent agents, that's the logical conclusion of your argument. It's not just that. It's the advertisements that induce the public to come there. In this instance, you've got a health system that has multiple immediate care facilities that funnel patients there. It's the badges. Those badges, those evidence, unequivocal testimony from Dr. Joshi that his badge had his name, did not have his practice group. He has no practice of informing his patients that he's not employed by the hospital. His badge said Ingalls. There's a dispute about this. But let's talk about the badge for a minute. Yes. Because under the Supreme Court precedents that bind us, one of the elements appears to be that the principal, which would be Ingalls, has to have acquiesced in the representations made by the apparent agent, which is the doctor. Okay. Does the mere fact that Dr. Joshi is walking around with a badge that says Ingalls, can we make the leap to say then that Ingalls surely knew about it or at least acquiesced in it? That's an interesting question, Your Honor, and I would just add the caveat that acquiescence and knowledge is not an element of apparent agency when it is the principal that's the one who's doing the holding out because the doctrine is based on apparent agency by estoppel. Now, is there anything in the record? I mean, there were depositions, obviously, where somebody from Ingalls said I'm the person who staffs the emergency room or the care center and, you know, we went to OfficeMax and got 100 of these badges made up that say Ingalls and handed them out to the doctors. We don't seem to have that in the record, do we? I think we have in the record that they're required to wear it. A badge was produced by another physician who saw him, saw the plaintiff's decedent at an immediate care facility. That had been changed. It was not the badge that was issued to Dr. Joshi, certainly, by how he testified. On the back of it, it says this badge remains the property of Ingalls Hospital. You must wear it at all times. But that was the badge from the immediate care facility. That wasn't the one from the hospital itself. That's correct. But, Your Honor, I mean it – Counsel, what do we know about this badge? Your client really knew nothing about it because couldn't remember what was on the badge, right? Well, in this case, the evidence regarding the badge is stronger than – What is the evidence about the badge? And it was obtained from the doctor, right? He never produced it. I understand, but what do we know from the facts of the case or from what the evidence shows in the depositions? What do we know about the badge? Dr. Joshi testified that it said ER physician and probably had the hospital's name on it. Probably. Did he say, I am sure 1,000 percent that they had the hospital's name on it? And then he testified that the nurse's badge would have been the same or similar because we're all in the emergency room. We do have a copy of the nurse's badge, and it says Ingalls Hospital. It has the Ingalls logo. It has the physical address. I know, but what I'm concerned about, is this a material fact? Is this a fact that we're so sure of, it's so material to this litigation? We were really unsure about the badge. Was there any question of the doctor about, well, how big was the printing of the hospital name or whatever, what color was it, how big was the badge? We don't know any of this. Well, for example, in Hammer, the plaintiff did not testify to any recollection of seeing the physician's badge or the lab coat that may or may not have had the hospital's logo on it. In this case, the evidence is stronger. My client testified in her deposition that one of the reasons she believed the defendant physician to be the agent of the hospital was because she observed his badge. But she didn't say what was on it. We have no idea. She has no idea what was on that badge. It's true, but it's more than what the court found to sustain some evidence in Hammer for reversing the grant of summary judgment. Let's jump over to the, away from the badge for a minute, to the advertisements that you mentioned, which are basically printouts off the Internet. Do we have any proper foundation for those? Well, I would start by saying that lots of courts are considering these advertisements in terms of whether they are evidence of holding out. I'll grant you that they can be useful to a plaintiff in a case like this. But if it seems here, somebody just sort of stapled them to the motion and said, here's some Internet stuff. I mean, I don't have any, do we have any affidavit from someone saying, I went to the Wayback website, or I did this, or, and I verified that this was, in fact, or took discovery from Ingalls and said, give me your archives of yourself, of your own archives, that you advertised this facility as being Ingalls. We don't have anything like that, do we? Well, there's an affidavit of the individual who obtained these from either the Wayback machine, which, by the way, many courts have recognized as a mainstream website. And that affidavit was from me. And that's where I got it. And also, those evidence of holding out are completely inconsistent with the party's position in this litigation. And through the affidavit of their general counsel, it's an admission. It's a statement against their condition at this time. And it contains facts that are relevant, if not in its current content, admissible, certainly could be at trial. I'd ask the court to consider them. They have distinctive characteristics of Ingalls brand, the logo. They deny that the third-party branding agency that they hired to create figures and illustrations of physicians are theirs. And then they use them on their website. The Supreme Court in Yarborough recently recognized, I think even pointing to this particular hospital, that the modern trend in the emergency room has increased. It's more of a reality today. And this brand elevation work is a good example of that. I'm sorry. What's on the increase? Those being independent contractors? The fact that hospitals and health systems are joining together. They're consolidating. And they're increasing their holding out to the public as full health systems that can provide complete medical care. And that induces the public to arrive before they're ever presented with a consent form. Counsel, how can you get around the holding of Steele versus Preventa or Mizied versus Payless? I think that Steele was distinguished subtly by Hammer. It said, Steele says that the consent form is almost conclusive. Relying on Cherokee, Hammer said, we don't think so. There can be other instances. And in all the cases that the defendant relies on, it was the fact of the consent form signed, coupled with the absence of other additional facts that demonstrate the reasonable perception of what the business arrangement is between the hospital and the physician. And even Mizied, it quotes Steele. But then after that, it talks about Cherokee. And it says, as in Cherokee, this is paragraph 64, we conclude that the lack of any facts showing that the hospital held out the doctor as its agent, coupled with the signed consent form, leads us to conclude as a matter of law that the plaintiff knew or should know. Well, tell me what, in your case, what are the facts that the doctor, that the hospital held out the doctor as its agent? What are those facts? Other than that he was working in the emergency room. If we assume that to be, you know, that's where doctors work, in emergency rooms. What else did the hospital or the doctor do that would lead a reasonable person to believe that the doctor was the employee of the hospital? Well, we talked about the inducing conduct of the advertisements, and we talked about the plaintiff's observations of a physician wearing a uniform and a badge and a lab coat that was the same as the other people, similar to the other people caring for it, the nurse, other members of the medical staff. But counsel, for summary judgment, the fact, not to be granted, the fact has to be material, material, not just, you know, a difference in facts, but it has to be something that's material. Are you telling me that in an emergency room if the doctors are wearing lab coats and they're working together with the nurses, it is material and suggests that they're employees of the hospital? Is that what you're saying? That's part of what I'm saying, in addition to other things. And the standard on summary judgment, it doesn't have to be some evidence, even if the court would characterize the evidence that the plaintiff has set forth in this case as scant. It is some evidence of a question of fact. One other question. To the plaintiff, the plaintiff, of course, testified that she thought, now, is the standard subjective or objective? The fact that she thought this, although she had signed multiple consent forms that were really aggressively worded, saying these doctors are not our employees, is her subjective belief in light of having signed those forms the standard that the court should be looking to? I'm glad you asked that, Your Honor, because there seems to have been some confusion on the trial court level. But it's always been our position that it's a reasonable person standard. A known or should have known standard incorporates objective and subjective components. Our plaintiff's subjective testimony colors, that's based not on unsupported conclusionary statements, like in Frazado's or the other cases the defendant relies on, but is based on standard concrete facts. And that's for the reasonable person to judge. So you're right, it's more of an objective standard, but our plaintiff's testimony colors whether a reasonable person would share this new mother who's in the emergency room for a neonate visit, whether they might share her perceptions. She had been to Ingalls many times before. Wasn't the baby born at Ingalls? It wasn't. The defendants and the trial court seems to have made a big deal about that there were many consent forms. Our position is not that her failure to read them obviates their effect, but that since she didn't read them, she didn't gain any additional notice by not reading one or not reading ten. So are you saying that if a person, if the hospital goes to the trouble of putting all this language in a consent form, if the patient signs it without reading it, that kind of obviates her response? It absolves her of responsibility to read that form so that now whatever the hospital had written in that form is of no effect? I mean, it sounds like that. Well, what exactly are you saying? I'm saying – She didn't read it, that's what she said. But there were multiple forms that she signed. Exactly. And so, again, it's not our position that her failure to read it obviates its effect or that the fact that they didn't explain it to her obviates its effect. It's the additional evidence that other courts have found that traditionally support a question of fact. And in this case, just so I can nail it down, the additional evidence is? Tell me again. The advertisements, the badge and uniform, the staff working together. You asked what else were the interactions between the plaintiff and the physician that might reasonably lead to a reasonable perception. As the child was being discharged, my plaintiff objected. She said, what's wrong with my baby? And the doctor reassured her, told her it was a worry-well – he felt it was a worry-well visit. And the nurse went over the discharge. These are members of medical staff at a hospital saying, you leave now, the baby's okay. And so there's authority there and the perception of authority. Counselor, can I ask you, I know there were notices that were signed, but also wasn't there a sign in the ER as testified to by Nurse McManus? There were multiple signs. I don't know where exactly they are. I'm not entirely familiar with the footprint of the hospital. I think she said there was one definitely in the ER, did she not? I believe so. My client didn't see them. She was asked at her deposition whether she recalled ever seeing any of those signs. And she said no. You know, a couple other things, the defendants claim that my client's affidavit, which is totally unlike the affidavits in the cases they rely on, it's based on facts, is conclusory or potentially contradictory. It's not. The defendants asked very general, broad questions with regard to agency in the discovery deposition. And our affidavit fills in those facts. It's supportive and complementary. So, again, I think the concept here is outside the consent form, which is what the cases say. Not all of them, counsel. Go ahead. Continue. I think even the cases that the defendants rely on say by implication, where are the other facts? There's no other facts. So it's that that has led us to conclude as a matter of law that the consent form will rule the day. But it certainly says, and Cherokee says too, and all the other cases cite Cherokee, it says that there certainly could be other facts outside of what I presume it would be an unambiguous consent form that could support a finding. And before you wrap up, just so I'm clear, your other facts are the fact that Dr. Joshi was wearing a lab coat with a badge that nobody knows exactly what the badge says, but we think it said Ingalls, right? He was working together with the nurse. The nurse and he worked together. And what was the third one? Advertisements. Oh, and there were advertisements that talked about what a great hospital Ingalls was. Is that it? Absolutely. And here's Dr. Joshi's unequivocal deposition testimony. And this is an inference that must be made in favor of the non-movement on summary judgment. I assume when you worked in the emergency room of Ingalls in 2012, you had some form of emergency badge. That is correct. So tell me what your badge says. It has my name and ER physician. Anything else? I don't think I ever looked at the badge that clearly. Well, do you know whether it said Ingalls Memorial Hospital? Well, it does have the name of Ingalls Memorial Hospital on it. Did he say it was front or back? He didn't, but this testimony is uncontradicted. So if a doctor is wearing a badge that says the name of the hospital, he is, according to you, the apparent agent of the hospital, is that it? This is one fact that is material that demonstrates a holding out by the hospital. Okay. So I'll wrap up and save a little time for rebuttal. Thank you for your time. And I ask that the Court reverse the grant of summary judgment. Mr. Clancy. Good morning. May it please the Court. Please state your name because this is recording. Yes, Kevin Clancy on behalf of Ingalls Health System, the defendant in this matter. Your Honor, no Illinois case has ever found an agency disclosure to be unambiguous, but then gone on to hold that there were other factors that invalidated that agency disclosure. And this should not be the first case. The factors, the other factors that the plaintiff has identified are that the doctors and nurses worked together collaboratively. He wore a badge and a lab coat. He introduced himself as Dr. Joshi, and there were advertisements with no evidence that the plaintiff had ever seen the advertisements and really no foundation for the advertisements. But be that as it may, these are all innocuous and universal characteristics of every hospital. Against the weight of ten admittedly unambiguous consent disclosures, the plaintiff wants to take these, this handful of innocuous and universal characteristics, and use them to foreclose the legal effect of these disclosures. I think the plaintiff has it backwards here. The Gilbert Court mentioned the modern reality of hospital, and plaintiff argues about the modern reality of hospitals that there are people working together and there are many factors that might give somebody the impression that maybe these doctors are employed. That's not something to contradict the agency disclosures. That's the reason we have the agency disclosures. We have them because it's a reality that people might possibly think the doctors are employees. And what do we do to counter that notion? Is it fair to say might possibly? I mean, if I walk into Walgreens or I walk into Starbucks and somebody provides service to me that I've requested, it's common sense that those persons are employees. I think it's reasonable. And the same, there's no difference with the hospital except that, you know, when they're coming in in a traumatized state, right, because they are seeking emergency medical care for themselves or for a family member, and when you have this disclosure, and the case law certainly says these disclosures are very important in terms of the analysis and the calculus, but is it fair to say that we can't look at anything else? I mean, they're walking into a building that says Ingalls, right, it says Ingalls Emergency, and what we have here is we do have the testimony of the doctor who says his badge said Ingalls, and then we have, I think, testimony from the nurse who said her badge said Ingalls, don't we? That's right. All right. So putting all these things together in light of Gilbert and in light of York, which are the two Supreme Court cases we have to follow, don't we have an issue of fact that prevents summary judgment? No, we don't. Okay. And the reason is because what Gilbert says is that a holding out is demonstrated when the hospital holds itself out as a provider of emergency room care without informing the patient that the care is provided by independent contractors. That's the language from Gilbert. There's two sides to it. You hold yourself out as a provider of emergency care, but you do it without having informed the patient that these people are independent contractors. Well, you know, hospitals have made their own business decisions to have doctors who are working within their walls who they now claim are not their employees, and they're required by Gilbert to inform the public. The question is, you know, as your opponent pointed out, whether the informing of the public actually takes place, how do they do this? Admittedly, I think Ingalls has one of the more aggressive consents and disclosure forms that I've seen. However, what if the patient, you know, as Justice Deloitte pointed out, people are sick. They're distressed when they're coming to an emergency room. It's not unlikely that they may not see a sign that's up on the wall saying, beware, these doctors who are treating you are not our employees. You came to Ingalls because that's your local hospital and so on. So what do you say to that? You know, the hospitals have created this fiction, and so you are in a position where you have to very assertively and aggressively do something to make sure that you are conforming to the three principles of Gilbert. So can you outline for me, just go in a very elemental way, one, two, and three, what did Ingalls do to make sure that they were in conformity with what was outlined by the Supreme Court in Gilbert? Yes, Your Honor. Actually, what I would say to that is what the Forzados Court said to that. The Forzados Court addressed an issue of the plaintiff failing to read the consent form because they came to the hospital in an emergent situation, they were experiencing severe abdominal pain, and as a result argued that they were unable to read the consent form and so it should be disregarded or diminished in importance. And what the Forzados Court said was, no, everybody that comes to the emergency room is in some form or in some manner in an emergent situation. And if we were to hold that being in pain or being distressed or being in an emergent situation could invalidate this consent form, the hospital would have to go to trial in every single case. And so what the Forzados Court is saying there is when you have these ubiquitous circumstances that exist at every hospital in every situation, you can't use those to undercut the importance of the consent form because it would undercut the importance of the consent form in every single case. But isn't it also a solution in the real practical world to ensure through supervision and through contractual requirements that everybody who's walking around that emergency room wears a badge that says MES Medical Services or whatever the name of the group is rather than anything symbolizing eagles? And having signed the consent form. I don't think that's required. No, you're missing the point. I don't think Justice Szilard's saying it's required. We're talking about subtleties and ambiguities here. And to the extent that the hospital is trying to avoid an ambiguity so that they can later say, we have nothing to do with that doctor. He only works here. He doesn't work for us. So you're on your own, Mr. Plata. In order to avoid that situation, wouldn't it be better to have a badge that says MES or whatever is the name of the company that this Dr. Joshi worked for instead of having a badge that says eagles where a reasonable person, even one who is not in distress, could conclude this person, this doctor works for eagles. He's wearing a badge that says eagles. So I think Justice Szilard's question was in the interest of avoiding these ambiguities and you standing here in front of us arguing this case, wouldn't it be better to have something that's really clear on this? And then we wouldn't be here if Dr. Joshi had a badge that says, you know, whatever his name is, first name Joshi, and his company's name on top. I think it would present a different hurdle for the plaintiff. Don't you agree? Yes, I do. It would present a different hurdle and it would be clearer. I will agree with that, Your Honors. If the badge said, like Dr. Helitzer's badge. But as that leads us right into the question, so doesn't the failure to have adopted that kind of a practice and instead, you know, peppering the record with the facts we have, create some kind of issue of fact that precludes summary judgment? There is where I respectfully disagree. I don't think that it does. And there's a couple of reasons for that. First, the plaintiff refers to this badge as saying Ingalls Hospital, and let's assume for the moment that it did say Ingalls Hospital. In the Hammer v. Barth case, what the court said was, the badge identified Dr. Barth as an advocate employee. Now, plaintiff argues, well, that's not really what the court meant. What the court meant in Hammer was, the badge said something that would give a reasonable person the impression that she was an employee. That's not the language of the court. So the plaintiff is adding to the language of the opinion. In addition to that, and this is why I asked to reference the Misiot case, which I apologize, I should have done earlier. In the Misiot case, that doctor worked for Payless Community Hospital, and that badge said, medical staff, Payless Community Hospital. In the deposition, they were asked, what does it say? It says, I'm on the medical staff of Payless Community Hospital. And the badge said all of that? The badge, as I read the opinion, the badge said Payless Community Hospital. And I believe the title at the top was medical staff. So whether it had the logo or the words, somewhere it said Payless Community Hospital. And the court said that's not enough, because it didn't say that this person was an employee of Payless Community Hospital. Putting the name on the badge indicates that's where you are, that's where I am. We're at Ingalls Memorial Hospital today. It doesn't speak to the legal significance or the legal relationship the way the word employee would. Now, Dr. Helixer's badge, which is from, is much more recent, does say independent contractor. So maybe we'll move to a day when there's more clarity in his badges, and maybe I won't be here next time. Counsel, let me ask you this hypothetical. Isn't it strange that if someone comes into an ER who's unconscious, they still have the ability to sue the doctor because they weren't able to read the signs or sign the consent? In that case, and this isn't in the record, but in that case. And I understand that, I understand that. But as we were reading through this, it was kind of intriguing. What typically happens there is somebody is with the patient and somebody signs on their behalf. Some people come on their own, though. I mean, just an interesting situation. Yes. With regard to these consent forms, Your Honors have asked questions about the nature of the hospital. It's a fast-moving environment. There are a lot of moving pieces. The people are there trying to provide, in the emergency department especially, emergent care under extremely important, sometimes life-threatening situations. Let me ask you a question, Mr. Canston. Let's cut to the chase here. The hospitals have these doctors working in their emergency room. They're independent contractors because whatever business reasons, the hospital contracted with an outside service. Most people in real life don't know that. They go to Ingalls or any other hospital because that's the emergency room either is closest to them or that they've heard is a good emergency room, so that's where they went. Our Supreme Court has laid out the three factors in Gilbert that the hospital, that the plaintiff has to meet in order to establish a parent agency. Can you speak to those three things as related to the facts of this case for me? Yes, absolutely. The first of those three, and the one that I believe is dispositive in this case, is the holding out element. And what Gilbert says is that you establish the holding out when a hospital holds itself out as a provider of emergency room care without informing the patient that the doctor is an independent contractor. And that is what gave birth to these agency disclosures that hospitals use now. They are used to answer the call from Gilbert to say you have to do something. You have an affirmative obligation to inform people. And what the agency disclosure does is it says it recognizes the reality. Yes, absolutely. Somebody could very well or will very well think everybody that is here works here, is an employee here. But what the agency disclosure does is it says it creates a separation and it says pause for a second. Whatever impression or notion you had before you got here today about who works where and who is employed here, we want to tell you expressly that they're not employees. They're independent contractors. We want to disabuse you of whatever notion you may have developed in the past, even though that notion may have been perfectly reasonable to develop. Gilbert put the onus on hospitals to inform somebody that the patient, that these people were independent contractors, and the hospitals have responded appropriately by rolling out these agency disclosures to tell people, I know you might think that people look like they're employees, but the doctors, they're not. And among the modern realities of hospital care, which is something Gilbert talks about and something plaintiff talks about here, among the modern realities is that hospitals really have to rely on written documents and written disclosures in order to dot their I's and cross their T's. That's the real reality here. There are a lot of moving parts. People are taken from the emergency department to imaging to get studies done, and then they're brought back and nurses come in and nurses come out. The hospital has to be able to say, regardless of all of these moving parts, here we've got something, and we put it in paper because it's important. And it's not just agency disclosures. It's informed consent. It's the discharge instructions that say, please come back if your fever gets worse or something like that. It's instructions on how to take medication and when to take medication. And believe you me, as this court is well aware, when something is not documented in the hospital records, it is the plaintiffs who are the first and the wildest to point out, where's that in the records? Where's that in the document? Where is it in the piece of paper? And so these agency disclosures are not a trick. It's not meant to be a got you. It's meant to clear the error and say, whatever you thought, don't think that anymore because of X, Y, and Z. With regard to the advertisements, I think that the agency disclosure forecloses any reliance on advertisements to believe that somebody is an employee because, first of all, there's no indication the plaintiff ever saw these advertisements. There's no indication anybody saw them. But even if they did, that deals with... You answered my question. You basically gave a nice response, but you only addressed one factor. Maybe two put together. And I asked you to specifically address all three because that's what the plaintiff's case is based on. So, you know, the reliance factor and so on, can you speak to that, whether it was reasonable or unreasonable? What did the hospital know about what Dr. Joshi was doing? What did they do about it? That kind of thing. So the first factor is the hospital holding itself out. The second factor is the doctor holding himself out with the hospital's knowledge. The third factor would be the reliance factor. I don't... Dr. Joshi didn't do anything in here to hold himself out as an employee. He wore a badge. He wore a lab coat. He introduced himself as Dr. Joshi. He didn't say that he's an employee, but he didn't say that he's not an employee. But that's no different than Frazado's. So I believe the second factor is irrelevant. This case really turns on the first factor, the claim that the hospital's holding itself out as the provider of complete care. With regard to the reliance factor, Gilbert talks about the patient relying on this conduct, relying on the representations or the impression that's being given here. I don't think it's possible to rely on the conduct of the hospital in this case or a case like this because the hospital isn't doing anything to give people the impression that this person has the legal status of employee other than doing what all hospitals do seven days a week. If the court has no further questions, I would ask respectfully that this court affirm the decision of the circuit court in granting summary judgment for the hospital. Thank you, Mr. Clancy. Mr. Davidson, brief rebuttal, please. Mr. Davidson, before you begin, let me ask my question. You know, we've heard a lot and we've read a lot about how important and how helpful these signed disclosures are for the hospital side of the equation. And this is a great case from some perspectives and it sort of falls in the middle of a bunch of precedents and we have to figure out which side of the balance it's going to end up on at the end of the day. But what's your best case where a patient did sign all these disclosures or at least one disclosure but in the end got out of summary judgment or the jury verdict was upheld against the hospital because of a badge or because of some emblem or distinctive lab coat that symbolized the hospital? What's your best case? Your Honor, you hit the point right on the head, which is that there's no case where there was an unambiguous consent form but that there were additional facts. My best case is Hammer because the way I read it is that the court found those additional facts to be a fresh consideration in addition to a potentially confusing consent form. Just a couple other things, you know, that I'd like to touch on briefly. I don't know if you guys have been to a hospital recently, but now what you're doing is signing an electric box and they tell you you can read the consent forms if you'd like. But was that done here? No, but we talked about where we're going with this. And so I wanted to bring that up. And in this case, they seem to say there's no reliance because there's no holding out. And I wanted to touch on reliance. There is reliance. This young mother relied on the hospital and the health system to select a physician for her. And that is, in fact, what happened. You can't avoid the reasonable factor. In Gilbert, they talk about reasonable and prudence. In light of the fact that she had signed all of those consents with that aggressive disclosure language, was it reasonable for her to then completely disregard all of that and based on the factors that you've mentioned, the working together, the badge, and the fact that Dr. Joshi was working in the emergency room, was that enough for her to ‑‑ does that show prudence and reasonableness in discounting the aggressive disclosure language which she had signed multiple times? She signed it. She didn't read it. And I'm not saying that obviates the effect. Another question ‑‑ But you are. I mean, you're basically saying if she signed it and didn't read it and these other factors came out, we need to give her a pass because these other factors override the fact that she didn't read it and stand in place of the fact that she didn't read it. That's not the law. But what the defendants are saying is not the law because their arguments, the sum total of it is that they are conclusive. But the law is clear. They are important, but they are not determinative. There's no case they rely on that says that it's not. And the First District has raised an eyebrow at this field decision where they said it's almost conclusive. On top of that, you have these advertisements that occur before the patient even presents to the emergency room and really has no meaningful choice at that point. But there was also a mention of the signs. I wanted to get that in for Your Honor's consideration. The plaintiff didn't see the signs, didn't read them. That's countered. The Affidavit of General Counsel says they're there. That's countered in this case by evidence of Dr. Yoshi's deposition testimony, that he's there day in and day out and didn't even have knowledge of these signs or what they may have said. Nobody's looking at these signs. And the trial court even recognized it's reasonable. They said, listen, I understand. People don't sign these forms or don't read these forms. And so even Dr. Yoshi's CV isn't indicated. So you're saying that Dr. Yoshi's interest to keep Ingles in the case? It may be, but we have to take his testimony at face value. But his testimony is, and I want to be precise, so I'm not misled, his testimony was that he did not remember seeing the signs as opposed to that the signs definitely were not there. I think that's entirely accurate. Okay. And so I'll conclude unless Your Honors have any additional questions. I think that the key here is that there's some evidence, even if it may not be particularly compelling, the jury may consider it to be. And so summary judgment is not appropriate at this time. Thank you very much. Thank you very much. Thanks, both sides, for a spirited argument. This case will be taken under advisement of the court's attorney.